**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

GLADYS ALLEN,

        Plaintiff,

v.

                          ACTION NO. 2:09cv265

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Gladys Allen ("Allen"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed August 10, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be REVERSED and the case be REMANDED to allow the administrative law judge to reevaluate Allen's residual functional capacity.


## I. PROCEDURAL BACKGROUND

On August 17, 2005, Allen filed an application for DIB

alleging an onset of disability as of April 15, 2005, due to osteoarthritis in knees, degenerative disc disease of the lumbar spine, fibromyalgia, insulin dependent diabetes mellitus, and depression.[1] (R.[2] at 21, 60, 89.) Allen's application was denied by the Social Security Administration initially on January 26, 2006 (R. at 42), and upon reconsideration on September 6, 2006 (R. at 41).

On November 1, 2006, Allen requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 48.) That hearing was held in Norfolk, Virginia, on March 14, 2007. (R. at 31.) At the hearing, Allen amended her disability onset date to December 1, 2005.[3] (R. at 345-49.) Allen testified at the hearing (R. at 21, 343-58); she

---

[1] Allen's application (R. at 89) and the Notice of Disapproved Claim (R. at 60) indicate that she suffered from osteoarthritis in her knees, degenerative disc disease, diabetes, and depression, but do not mention fibromyalgia. In the transcript of the hearing, the ALJ summarizes Allen's complaints as "osteoarthritis in the knees, diabetes mellitus, . . . depression, [and] degenerative disc disease." (R. at 344.) The ALJ's decision indicates that Allen suffers from fibromyalgia, as well as degenerative disc disease of the lumbar spine, insulin dependent diabetes mellitus, and non-severe depression, but does not mention the osteoarthritis. (R. at 23-24.) Plaintiff's complaint does not mention any osteoarthritis but adds a claim of anxiety. (Compl. 2.)

[2] "R." refers to the transcript of the administrative record of proceedings relating to this case.

[3] The onset date was amended because Allen was working until November 2005, but was initially mistaken about when she last worked.

2

was represented by her attorney, Charlene Morring (R. at 21, 49-50). Donna Greer, Allen's daughter (R. at 21, 358-60), and Robin D. Stromberg, a vocational expert (R. at 21, 360-62), were also present and testified at the hearing.

On August 23, 2007, the ALJ issued a decision finding that Allen was not entitled to DIB because she was not disabled within the meaning of the Act at any time from December 1, 2005, through the date of decision. (R. at 21.) Specifically, the ALJ found that Allen had "the residual functional capacity to perform the full range of sedentary work" and was "capable of performing past relevant work as a work control clerk and a call center operator." (R. at 25, 27.)

On September 4, 2007, Allen requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and Appeals ("Appeals Council"). (R. at 17.) The Appeals Council denied Allen's request for review on April 24, 2009, stating that it found no reason to review or change the ALJ's decision. (R. at 6-9.) This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981.

Allen brought the instant action seeking judicial review of the decision of the Commissioner denying her claim for DIB. Allen filed the instant complaint on June 3, 2009, which Defendant answered on August 7, 2009. Allen filed a motion for summary

judgment with a memorandum in support on September 9, 2009. Defendant filed a motion for summary judgment and in opposition to Allen's motion for summary judgment with a memorandum in support on October 15, 2009. Allen filed a response to Defendant's motion for summary judgment on October 23, 2009. Neither party has indicated special circumstances requiring oral argument in this matter; therefore, the case is deemed submitted for decision based on the memoranda.

## II. FACTUAL BACKGROUND

Allen is a fifty-seven (57) year old female, who was fifty-three (53) on the date of the alleged onset of her disability and fifty-five (55) at the time of the ALJ's August 23, 2007 decision.[4] (R. at 344.) Allen attended college for two (2) years, and she has worked in the past as an equipment assistant, a retail clerk, a call center operator, a work control clerk, and a library technician. (R. at 344, 360-62.) Allen alleges that she became disabled as of December 1, 2005, due to osteoarthritis of the knees, degenerative disc disease of the lumbar spine, fibromyalgia, insulin dependent diabetes mellitus, and depression. (R. at 21,

---

[4] Allen was fifty-two (52) years old as of April 15, 2005, the original date of onset of the disability, but fifty-three (53) as of December 1, 2005, the amended date of onset. Similarly, Allen was fifty-four (54) at the time of the ALJ's March 14, 2007 hearing but turned fifty-five (55) before the ALJ issued his decision on August 23, 2007.

4

60, 89.)

The ALJ found that, at the time of the March 14, 2007 hearing, Allen suffered from degenerative disc disease of the lumbar spine, fibromyalgia, and insulin dependent diabetes mellitus, which the ALJ found to be severe impairments. (R. at 23.) The ALJ found that Allen's depression was non-severe. Id. The ALJ, however, found that Allen's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) The ALJ then found that Allen had "the residual functional capacity to perform the full range of sedentary work." (R. at 25.) The ALJ found that Allen could return to her past work as a work control clerk and a call center operator because "this work was classified as sedentary, semi-skilled work activity." (R. at 27.) Accordingly, the ALJ found that Allen was not disabled within the meaning of the Act. (R. at 28.)

## III. STANDARD FOR SUMMARY JUDGMENT

The Court shall grant summary judgment if, viewing the record as a whole, it concludes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party."

5

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp, 477 U.S. at 322-27. In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must "view[] the record as a whole in the light most favorable to the non-movant." Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). If "the evidence . . . is so one-sided that one party must prevail as a matter of law," the Court should grant summary judgment in that party's favor. Anderson, 477 U.S. at 251-52. Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set out specific facts showing a genuine issue for trial" with respect to that element, Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he court must review each motion separately on its own merits 'to determine whether either of

6

the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When deciding cross-motions for summary judgment, a district court retains the responsibility to examine the record to ensure that no disputed issues of fact exist, despite the parties' assurances to that effect." Kavanaugh v. City of Phoenix, 25 F. App'x 516, 517 (9th Cir. 2001) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).

## IV. **STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION**

The Commissioner ultimately held that Allen was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is "specific and narrow." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), superceded in non-relevant part by 20 C.F.R. § 404.1517(d)(2); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter, 993 F.2d at 34 (quoting Richardson v.

7

_Perales_, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." _Id._ (quoting _Laws v. Celebrezze_, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty "to make findings of fact and to resolve conflicts in the evidence." _Hays_, 907 F.2d at 1456 (citing _King v. Califano_, 599 F.2d 597, 599 (4th Cir. 1979)). The Court "do[es] not conduct a _de novo_ review of the evidence" or of the Commissioner's findings. _Schweiker_, 795 F.2d at 345. In reviewing for substantial evidence, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." _Craig v. Chater_, 76 F.3d 585, 589 (4th Cir. 1996) (citing _Hays_, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." _Id._ (quoting _Walker v. Bowen_, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. _Richardson_, 402 U.S. at 401. The issue before this Court, therefore, is not whether Allen is disabled, but whether the Commissioner's finding that Allen is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. _See id._; _Coffman v._

8

Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

## V. ANALYSIS

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(1)(A). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[6] that exists in the national economy. 20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(2)(A).

### A. Sequential Disability Analysis

The Commissioner follows a five-step sequential analysis to

---

[5] "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[6] "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. § 404.1520. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is *not* disabled and the inquiry is halted. 20 C.F.R. § 404.1520(a)(4)(i), (b).

(2) Whether the claimant has a severe impairment (i.e., whether the claimant has an impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities"). If not, the claimant is *not* disabled and the inquiry is halted. Id. § 404.1520(a)(4)(ii), (c).

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted. Id. § 404.1520(a)(4)(iii), (d).

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is *not* disabled and the inquiry is halted. Id. § 404.1520(a)(4)(iv), (f).

(5)    Whether the claimant is able to perform any other work
       considering the claimant's residual functional capacity[7]
       and vocational abilities.   If so, the claimant is *not*
       disabled. Id. § 404.1520(a)(4)(v), (g).

    In this case, the ALJ decided at step four of the analysis
that Allen was not disabled.

## 1. Steps One Through Three

    At step one of the analysis, the ALJ determined that Allen
"had not engaged in substantial gainful activity since December 1,
2005, the amended alleged onset date." (R. at 23.)   At step two,
the ALJ determined that Allen's degenerative disc disease of the
lumbar spine, fibromyalgia, and insulin dependent diabetes mellitus
are severe impairments.   Id.   However, the ALJ determined that
Allen's major depressive disorder is non-severe because it causes
only mild limitations and there is no evidence of mental health
treatment.  (R. at 23-24.)  At step three, the ALJ found that Allen
"does not have an impairment or combination of impairments that
meets or medically equals one of the impairments listed in 20
C.F.R. Part 404, Subpart P, Appendix 1."   (R. at 24.)

## 2. The ALJ's RFC Determination

    Prior to step four, the ALJ determined Allen's RFC to perform

---

[7] "Residual functional capacity" is the most a claimant can do
in a work setting despite the physical and mental limitations of
her impairment and any related symptoms (e.g., pain).   See 20
C.F.R. § 404.1545(a)(1).

11

the requirements of her past relevant work or other work existing in significant numbers in the national economy. (R. at 25-27.) The ALJ defined RFC as the claimant's "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." (R. at 22.) The RFC determination was based on the ALJ's evaluation of the evidence in the record, including Allen's testimony, and the findings of treating, non-treating and other consulting physicians, and the state agency's disability determination, rendered by a non-examining physician, which reflect judgments about the nature and severity of the impairments and resulting limitations. (R. at 25-27.) Based on the evidence as a whole, the ALJ determined that Allen is capable of performing "the full range of sedentary work." (R. at 25.)

### a. Claimant's Testimony

In reaching a conclusion about Allen's RFC, the ALJ gave consideration to Allen's testimony. The ALJ noted in his opinion that Allen's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Allen's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 26.) The ALJ found that the objective medical evidence does not support Allen's allegations regarding the intensity and persistence of her pain. (R. at 26-27.) Specifically, the ALJ found that an MRI performed on July 7, 2004, showed a small mid-line disc protrusion

12

at L4-L5 with a small annular tear, but no central or spinal stenosis and no tenderness. (R. at 26.) Additionally, consultive examinations, X-rays, and a bone scan showed no significant abnormalities. (R. at 27.) The ALJ also considered Allen's testimony that she was able to care for herself, do household chores when her pain was not too severe, and go shopping. Id.

### b. Review of the Medical Evidence

The ALJ considered the objective medical evidence in the record and found that "[t]he claimant has the residual functional capacity to perform the full range of sedentary work." (R. at 25.) Specifically, the ALJ found that despite Allen's complaints of severe back and knee pain, objective testing and evaluations were generally normal. (R. at 26-27.)

The ALJ considered the medical source opinions of treating and examining physicians in the record. (R. at 26-27.) First, the ALJ considered the records of Dr. Richard B. Goodjoin (R. at 26), who treated Allen for at least one and a half years[8] (R. at 139-40, 182-83). Dr. Goodjoin's records indicate that Allen repeatedly complained of pain in her back, knees, and right shoulder. (R. at 139-69). An MRI was performed on July 7, 2004, which revealed a small midline disc protrusion with small annular tear and mild

---

[8] The earliest evidence in the record indicating that Dr. Goodjoin was treating Allen is a CT report performed on April 9, 2004, which notes that Dr. Goodjoin was the ordering physician. (R. at 182-83.) The most recent report in the record from Dr. Goodjoin is dated September 19, 2005. (R. at 139-40.)

13

proliferative changes in posterior facets at L4-L5. (R. at 178-79, 273.) However, the MRI revealed no fractures and no evidence of central canal or foraminal stenosis. Id. Examinations revealed no paraspinous tenderness to palpation of cervical, thoracic, lumbar or sacral regions on May 10, 2005 (R. at 158-59), but some mild lumbosacral spine tenderness on August 2, 2005 (R. at 148-50). Allen had full range of motion in her extremities and 5/5 strength in her lower extremities bilaterally. (R. at 148-50.) Dr. Goodjoin prescribed numerous medications to alleviate Allen's pain, including an injection of Kenalog on August 2, 2005, for her right shoulder pain. (R. at 143-44, 148-49, 158-59.) Allen's records indicate that she had another MRI of her back on August 3, 2005, which confirmed the results of the July 2004 MRI and also revealed a mild disc dessication at L4-L5 and conus madullaris ends at L1, indicative of early degenerative disc disease. (R. at 145-47.) Additionally, Dr. Goodjoin's notes are replete with notations that Allen's insulin dependent diabetes was poorly controlled and that she was scheduled to get an insulin pump. (R. at 165-72.)

The ALJ also considered medical evidence from other treating physicians. (R. at 27.) Allen was referred to Dr. Joann W. Dervay, an orthopaedic specialist, who performed an examination on June 6, 2006. (R. at 262-63, 275-78.) Dr. Dervay reported that the examination was normal with no "significant tenderness in the lumbosacral paraspinals or over the sacroiliac joint, sciatic

14

notch, or greater trochanteric bursa." (R. at 263.) Allen had full range of motion and "a normal neurological exam with normal strength, normal deep tendon reflexes, and normal sensation." Id. However, testing did indicate tender points in 8 out of 18 locations. Id. X-rays of Allen's shoulders showed "no significant degenerative changes." Id. Dr. Dervay suggested that Allen may have fibromyalgia. Id.

Dr. Dervay referred Allen to the Center for Pain Management, where she was evaluated by Dr. Robert B. Hansen on August 22, 2006. (R. at 253-58.) Allen presented with normal gait, good strength, and reasonably good range of motion. (R. at 254.) Upon palpation, Allen experienced "rather marked pain . . . in the midtrapezial region, the supraspinatus muscles, above and below the clavicle on the anterior neck, both trochanteric bursae and both epicondylar areas," indicating tender points in 12 out of 18 locations. Id. Dr. Hansen opined that Allen suffered from multifactorial chronic pain and fibromyalgia. Id. Thereafter, a whole body bone scan conducted on October 24, 2006, came back negative. (R. at 229.)

The ALJ also considered evidence from two consultative examinations performed by the Virginia Department of Rehabilitative Services. (R. at 27, 203-07, 305-10.) On December 21, 2005, Dr. Peter Birk performed an examination that focused on Allen's knees and back. (R. at 203-07.) Dr. Birk noted that Allen had some difficulty arising from a squatted position, but that she was able

15

to heel-and-toe walk, had normal straight leg raising, and observed no tenderness, swelling, deformity, effusion, Baker cysts or decreased range of motion. (R. at 205.) With regard to Allen's back pain, Dr. Birk noted that Allen's lumbar curvature was normal, she had no paravertebral muscle spasm, and she was able to flex her lumbar spine 80 degrees and flex laterally 20 degrees to the right and 15 degrees to the left. Id.

On May 19, 2007, Dr. Seth Tuwiner conducted a second consultative examination to evaluate Allen's osteoarthritis, back pain, and diabetes. (R. at 305-10.) Dr. Tuwiner noted that Allen was "able to take her shoes on and off without limitation," was "able to toe-heel walk without limitation," had "normal gait with symmetrical arm swing," and normal range of motion in all joints. (R. at 307.) Straight leg raising test was negative, there was no paravertebral muscle tenderness, and Allen's motor strength was 5/5 in her proximal and distal muscles bilaterally. Id. Dr. Tuwiner diagnosed Allen with osteoarthritis of the knees, mild to moderate back pain, and diabetes mellitus. (R. at 307-08.) Dr. Tuwiner predicted that Allen could stand and walk for six hours per day with no limitation in sitting. (R. at 308.) On May 23, 2007, Dr. Jack Lowdon performed an x-ray, which revealed "[n]o significant abnormality of the lumbosacral spine or knees." (R. at 304.)

Finally, the ALJ considered the opinion evidence of the state agency medical consultants. (R. at 27.) Consultations were

16

initially completed by Dr. Irvin Cohen, a psychiatry specialist (R. at 208-22), Dr. Shanker Gupta, an orthopedics specialist (R. at 225), and Dr. Malcolm Druskin, an internal medicine specialist (R. at 226). Allen requested reconsideration of the consultations, which were conducted by Dr. Barry Hurwitz, a psychology specialist (R. at 269), Dr. Francis Clark, an orthopedic specialist (R. at 271-72), and Dr. Lewis Cylus, an internal medicine specialist (R. at 268). As noted by the ALJ, all of the consultants concluded that Allen's impairments were non-severe. (R. at 27.)

Additional objective medical evidence in the record relevant to Allen's functional capacity, and available for the ALJ's review, includes notes and records from multiple treating, examining, and evaluating physicians. These include:

- Dr. Karen M. Armstrong's psychological evaluation on December 6, 2005.[9] (R. at 198-201.) Allen was referred to Dr. Armstrong to assist in determining eligibility for social security benefits. (R. at 198.) Allen reported that she is depressed because she is constantly in pain and cannot do the things that she used to enjoy. Id. She

_____

[9] The Court notes that the ALJ referred to Dr. Armstrong's evaluation by exhibit number when determining whether Allen has a severe impairment at step two. The ALJ cited Dr. Armstrong's report to establish that Allen had been diagnosed with major depressive disorder, but he did not specifically discuss the findings or observations contained within the report. When assessing Allen's RFC, the ALJ made no reference to Dr. Armstrong's evaluation, by exhibit number or otherwise.

17

reported that she is edgy and snappy and has suicidal thoughts. Id. At the evaluation, Allen was nicely attired and groomed, had normal motor skills, presented with average intellect, and had mild difficulty with attention and concentration. (R. at 199.) Allen's affect was dysphoric and she reported dissatisfaction with her life and expressed thoughts of suicide but did not feel that she would actually carry through with a suicide attempt. (R. at 200.) Dr. Armstrong diagnosed Allen with "Major Depressive Disorder, Recurrent, Severe, Nonpsychotic" and recommended mental health treatment, antidepressants, psychotherapy, and social support groups. Id. On Axis V, Dr. Armstrong assigned Allen a Global Assessment of Functioning (GAF) score of 50. Id.

- Dr. Mark Long of the Virginia Department of Rehabilitative Services, who conducted a mental health evaluation on April 30, 2007.[10] (R. at 299-303.) Allen reported to Dr. Long that she was unhappy all the time and anxious about the her

---

[10] Dr. Long's Psychological Evaluation Report was received subsequent to the oral hearing before the ALJ, but available for the ALJ's consideration prior to rendering a decision in this matter. The Court notes that, like Dr. Armstrong's evaluation, the ALJ referred to Dr. Long's report by exhibit number when determining whether Allen has a severe impairment at step two. The ALJ cited Dr. Long's report to establish that Allen had been diagnosed with major depressive disorder, but he did not specifically discuss the findings or observations contained within the report. When assessing Allen's RFC, the ALJ made no reference to Dr. Long's evaluation, by exhibit number or otherwise.

marital and financial difficulties. (R. at 302.) Allen also denied having "suicidal ideation and intent." Id. Dr. Long diagnosed Allen with "Major depressive disorder, recurrent, severe; provisional generalized anxiety disorder." Id. On Axis V, Dr. Long assigned Allen a GAF of 55. Id. Dr. Long noted that "[t]he likelihood [Allen] would be successful at competitive employment at this point in time is quite low." (R. at 303.) Dr. Long recommended mental health treatment consisting of pharmacotherapy and psychotherapy but noted that she had "a history of . . . dropping out of treatment prematurely." Id.

### 3. Step Four

At step four of the analysis, the claimant bears the burden to prove that she is unable to perform her past relevant work. Grant v. Schwiker, 699 F.2d 189, 191 (4th Cir. 1983). Based upon the RFC determination, supra, that Allen is capable of performing sedentary work, and the testimony from the vocational expert, the ALJ found that Allen retained the capability to perform the functional demands of her previous occupations as a work control clerk and a call center operator. (R. at 27-28.) As indicated by the vocational expert, these jobs were "sedentary, semi-skilled labor." (R. at 27, 362.) Therefore, the ALJ found that Allen is not disabled within the meaning of Sections 216(i) and 223(d)(1) of the Social Security Act. (R. at 28.)

19

## B. **Plaintiff's Allegations**

Allen makes four arguments regarding the ALJ's analysis: (1) the ALJ failed to consider that Ms. Allen suffers from severe mental impairments of depression and anxiety disorder, which significantly limit her ability to perform basic work activities; (2) the ALJ erred in discrediting Ms. Allen's testimony regarding the severity of her disabling pain; (3) the ALJ failed to consider the medical opinion of Dr. Mark Long when assessing Ms. Allen's residual functional capacity; and (4) the ALJ erred in finding that Ms. Allen is capable of performing her past relevant work despite the overwhelming evidence that demonstrates that her mental and physical conditions prevent her from performing sedentary work. These arguments are addressed in turn.

As discussed below, the Court FINDS that there is substantial evidence in the record to support the ALJ's findings that Allen's mental impairments are non-severe and that Allen is only partially credible. However, the ALJ's assessment of Allen's residual functional capacity is not supported by substantial evidence because the ALJ failed to consider Dr. Long's report, or any other evidence of Allen's non-severe mental impairments. Accordingly, the Court RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED to allow the ALJ to reevaluate Allen's RFC.

### 1. **The Severity of Allen's Mental Impairments**

Allen alleges that the ALJ's finding that her mental

20

impairments are not severe is not supported by substantial evidence. (Mem. Supp. Pl.'s Mot. Summ. J. 12-17 [hereinafter Pl.'s Mem. Supp.].) Allen argues that "the medical record as a whole, including statements from treating and non-treating physicians, as well as Ms. Allen's testimony and the lay testimony of Ms. Greer, . . . all indicate that Ms. Allen's depression and anxiety disorder have a significant impact on her ability to perform work and carry out day to day functions." Id. at 13.

At step two of the sequential disability analysis, the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). "[A]n impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities.[11]" Social Security Ruling (SSR) 96-3p, 61 Fed. Reg. 34,468, 34,469 (July 2, 1996). In contrast, "'an impairment can be considered as "not severe" only if it is a *slight abnormality* which

---

[11]   The social security regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including:
(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instruction;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.
20 C.F.R. § 404.1521(b).

has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984)); <u>see also</u> 20 C.F.R. § 404.1521(a).

When evaluating the severity of mental impairments, the social security regulations require adherence to "a special technique." 20 C.F.R. § 404.1520a(a). First, the ALJ must determine whether the claimant has "a medically determinable mental impairment(s)." <u>Id.</u> § 404.1520a(b)(1). Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)," <u>id.</u> § 404.1520a(b)(2), in "four broad functional areas": (1) "[a]ctivities of daily living"; (2) "social functioning"; (3) "concentration, persistence, or pace"; and (4) "episodes of decompensation," <u>id.</u> § 404.1520a(b)(3). The first three functional areas are assigned a rating of "[n]one, mild, moderate, marked, [or] extreme." <u>Id.</u> § 404.1520a(b)(4). The fourth functional area is assigned a rating of "[n]one, one or two, three, [or] four or more." <u>Id.</u> Third, the ALJ uses the ratings of the degree of functional limitation to "determine the severity of [the claimant's] mental impairment(s)." <u>Id.</u> § 404.1520a(d). The mental impairment will generally be considered "not severe" if the first three functional areas are assigned a rating of "none" or "mild"

22

and the fourth functional area is assigned a rating of "none." Id. § 404.1520a(d)(1). Fourth, if the mental impairment is deemed severe, then the ALJ must "determine if it meets or is equivalent in severity to a listed mental disorder." Id. § 404.1520a(d)(2). Finally, if the claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, [the ALJ] will then assess [the claimant's] residual functional capacity." Id. § 404.1520a(d)(3).

In reviewing the ALJ's determination that a claimant does not suffer from a severe impairment, "the court's function . . . is limited to determining whether substantial evidence exists in the record to support the ALJ's findings." Watkins v. Astrue, No. 2:08cv56, 2009 WL 3855756, at *17 (W.D. Va. Nov. 17, 2009). For the reasons stated herein, the Court FINDS that the ALJ's determination that Allen's mental impairments were non-severe is supported by substantial evidence.

### a. Allen's Depression

At the outset, the Court notes that the ALJ followed the special technique for assessing mental impairments, as required by the regulations. The ALJ first found that Allen's depression was a medically determinable mental impairment. (R. at 24.) Then the ALJ rated Allen's impairments in the four functional areas established by the regulations, finding that she had mild limitation in each of the first three categories and no episodes of

23

decompensation in the fourth category.  Id.  Based on these

ratings, the ALJ determined that Allen's depression was not severe.

Id.

Despite following the required analysis, Allen contends that

the ALJ's finding that her depression is not severe is not

supported by substantial evidence.[12]  Allen argues that, contrary

to the ALJ's conclusion, the medical evidence establishes that she

has been consistently diagnosed with recurrent severe major

depression as early as October 8, 2003. (R. at 185-89; 198-201;

___

[12]  Allen's brief seems to imply that the ALJ's determination
that her depression is not severe was based primarily, if not
exclusively, on a finding that there was no evidence of mental
health treatment.  Allen's brief characterizes the decision as
follows:
> The ALJ found that the evidence in the record
> demonstrates that Ms. Allen suffers from a major
> depressive disorder.  However, the ALJ found that the
> evidence in the record failed to reflect mental health
> treatment for this condition and that there was no
> evidence of being prescribed psychotropic medications for
> this condition.  Therefore, the ALJ found that Ms.
> Allen's major depressive disorder was non-severe.

(Pl.'s Mem. Supp. 12-13.)  It is true that the ALJ noted Allen's
apparent failure to receive mental health treatment or take
psychotropic medications for her depression (R. at 23), and the
record is replete with notations that Allen was noncompliant with
mental health treatment (R. at 143-44; 158-59; 165-66; 168-69; 171-
72; 186-89; 198-201; 303).  After an appropriate inquiry,
noncompliance with prescribed medical treatment may be a basis for
denying disability benefits.  See 20 C.F.R. § 404.1530; Nunley v.
Barnhart, 296 F. Supp. 2d 702, 704 (W.D. Va. 2003); Wyrick v.
Apfel, 29 F. Supp. 2d 693, 697-98 (M.D.N.C. 1998), aff'd 165 F.3d
913 (4th Cir. 1998) (table decision); Social Security Ruling (SSR)
82-59.  However, in this case it does not appear that the ALJ
rested his decision on Allen's noncompliance with mental health
treatment because he proceeded to evaluate her limitations in each
of the four broad functional areas set out in the regulations. (R.
at 24.)

24

299-303.) Allen also asserts that she was assigned a Global Assessment of Functioning (GAF) score[13] of 50 on October 8, 2003, and December 6, 2005, indicating serious symptoms, and a score of 55 on April 30, 2007. Id. Furthermore, Allen argues that her own testimony, as well as the testimony of her daughter, supports a finding that her depression is severe because it significantly limits her ability to do daily activities.

Defendant argues that there is substantial evidence in the record to show that Allen can perform basic mental work tasks without mental health treatment or medication. (Def.'s Mem. 15.) Defendant also argues that "while a GAF score is considered with all of the evidence, it is certainly not dispositive of whether a claimant is disabled and does not comport with the severity ratings of the Commissioner's regulations." Id. at 15-16.

First and foremost, the Court notes that Allen's confirmed diagnosis of severe depression is not conclusive for purposes of determining disability and entitlement to social security benefits. See Gotshaw v. Ribicoff, 307 F.2d 840, 844 (4th Cir. 1962) ("[T]he mere presence of a disease or medically determinable impairment does not automatically entitle a claimant to a disability period or disability insurance benefits under the Social Security Act.");

---

[13] The Global Assessment of Functioning (GAF) score is provided on Axis V of the multiaxial assessment format used by the American Psychiatric Association to identify mental disorders. Stoddard v. Astrue, 2009 WL 2030349, at *10 n.4 (C.D. Cal. July 8, 2009).

<u>Sellers v. Barnhart</u>, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) ("A diagnosis alone is an insufficient basis for a finding that an impairment is severe.").

Allen further argues that she was assigned a GAF score of 50, indicating that her symptoms were severe. The GAF score "reflects a clinician's subjective judgment of a patient's overall level of functioning." <u>Stoddard v. Astrue</u>, 2009 WL 2030349, at *10 n.3 (C.D. Cal. July 8, 2009). A GAF score of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)</u> 34 (4th ed., text rev. 2000).

The Courts are split on the significance that GAF scores have on determining disability for the purpose of awarding social security benefits. Some courts require that the ALJ specifically consider a GAF score provided by a treating physician when assessing the claimant's RFC, and explain the reasons for crediting or discrediting the score. <u>See</u> <u>Escardille v. Barnhart</u>, No. Civ.A. 02-2930, 2003 WL 21499999, at *6-7 (E.D. Pa. June 24, 2003) ("The GAF score constituted a specific medical finding that plaintiff was unable to perform competitive work. . . . Since the ALJ entirely failed to evaluate [the doctor's] report, the ALJ's determination

is not supported by substantial evidence."). Other courts have concluded that GAF scores have little value in assessing disability. See DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 415 (6th Cir. 2006) (unpublished) (noting that the Sixth Circuit has "previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination." (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)); Wind v. Barnhart, 133 F. App'x 684, 692 (11th Cir. 2005) (unpublished) (considering the GAF score but recognizing that "the Commissioner has declined to endorse the GAF scale"); McGregor v. Astrue, No. 8:08cv2361, 2010 WL 138808, at *3 (M.D. Fla. Jan. 12, 2010) ("[A] single GAF score does not provide solid evidence of a severe mental impairment."); Gasaway v. Astrue, No. 8:06cv1869, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) ("Reliance upon a GAF score is of questionable value in determining an individual's mental functional capacity."). In response to a comment that the social security regulations should discuss the Global Assessment of Functioning Scale, the Social Security Administration took the stance that the GAF scale "does not have a direct correlation to the severity requirements in [the social security] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000). Therefore, Allen's GAF score of 50 has minimal relevance in

27

determining the severity of her mental impairment.

Further weakening Allen's claim is the fact that she worked for over two years after she was initially diagnosed with severe depression and assigned a GAF score of 50. "[E]vidence showing that a claimant has worked despite a long standing impairment may be substantial evidence that the impairment is not disabling." Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987). "Where a claimant has been employed and suffers from the same symptoms and same complaints in that time period as when he claims disability, [s]he cannot be found disabled absent a showing of significant deterioration." Smith v. Barnhart, No. 6:04cv34, 2005 WL 823751, at *5 (W.D. Va. Apr. 8, 2005). Therefore, in order to establish that her depression is a severe impairment, Allen must show that her symptoms significantly deteriorated after December 1, 2005, the alleged date of onset of her disability. Allen alleges that her symptoms worsened around the onset date[14] because of stress from taking care of her elderly parents. (Pl.'s Reply Br. 4.) However, it appears that Allen was able to continue to care for her disabled parents for at least eight (8) months after her onset date. (R.

---

[14]    At the hearing before the ALJ, Allen's attorney also represented that Allen had been hospitalized in January 2007 for suicidal ideations and that records from Maryview would be submitted to the ALJ for his consideration. (R. at 342.) However, the administrative record filed in this Court does not contain any reports referencing the January hospitalization, and there are no records from Maryview Hospital.

28

at 253.) Furthermore, to the extent that the GAF scale is relevant, Allen was most recently assigned a GAF score of 55 by Dr. Long. (R. at 302.) A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34. This indicates that her symptoms actually improved during the alleged period of disability.

The ALJ's conclusion that Allen suffered from only mild mental impairments is consistent with the medical evidence in the record. Although Dr. Armstrong assigned Allen a GAF score of 50, indicating severe symptoms, her detailed notes suggest that Allen's symptoms were mild or moderate. Dr. Armstrong noted that although Allen seemed depressed and her "affect was mostly dysphoric," she "did not show gross impairment of memory, language or cognitive skills," "had mild difficulty with attention and concentration," "probably has variable memory and cognitive efficiency, related to her attentional status," and "showed some irritability and mild difficulty in relating socially that seemed secondary to depression and pain and not indicative of a lack of social interaction skill." (R. at 199-200.) Furthermore, the ALJ's conclusion that Allen's depression is not severe is consistent with the Psychiatric Review Technique Form completed by Dr. Irvin Cohen (R. at 208-22) and the opinion of Dr. Barry Hurwitz on reconsideration (R. at 269). Dr.

Cohen assessed Allen's records and concluded that her depression imposed only mild limitations in the first three functional areas and no episodes of decompensation. (R. at 218.) Accordingly, Dr. Cohen determined that Allen's depression was a non-severe impairment. (R. at 222.) On reconsideration, Dr. Hurwitz affirmed Dr. Cohen's assessment. (R. at 269.)

Accordingly, the Court FINDS that the ALJ's conclusion that Allen's mental impairment was not severe is supported by substantial evidence.

### b. Allen's Anxiety

Allen did not allege anxiety disorder as a disabling impairment until she filed her Complaint in this Court seeking review of the ALJ's decision. (Compl. 2.) Allen did not assert anxiety as a basis for disability in her initial application (R. at 89) or at the hearing before the ALJ (R. at 344). It is well established that "in most instances, a claim must be raised at the administrative level before a reviewing court may consider it." Kendrick v. Sullivan, 784 F. Supp. 94, 99 (S.D.N.Y. 1992). Although anxiety disorder appears in Allen's medical history and the record contains some references to symptoms of anxiety (R. at 139-40, 158-59, 213, 254, 263, 302), Allen did not present anxiety as a disabling impairment at the agency level, and even the arguments in her brief in this Court focus primarily on symptoms of depression.

"A court may waive the need to exhaust administrative remedies [if] . . . the challenge is collateral to the demand for benefits, the exhaustion of remedies would be futile, and enforcement of the exhaustion requirement would cause the claimants irreparable injury."  New York v. Sullivan, 906 F.2d 913, 917-18 (2d Cir. 1990).  The issue of anxiety raised by Allen in her Complaint is not a collateral issue, but part of her substantive claim that she is entitled to social security benefits.  Therefore, Allen must exhaust her claim of disability because of anxiety disorder by presenting to the administrative law judge for decision.  Because she failed to present anxiety as a disabling impairment, she cannot raise it for the first time on appeal in this Court.  Accordingly, the Court FINDS that Allen's claim for disability based on anxiety disorder is not cognizable in this appeal.

## 2. Allen's Credibility

Allen claims that the ALJ improperly found her to be only partially credible, alleging that "[t]he ALJ improperly applied the incorrect standard in evaluating Ms. Allen's complaints of pain." (Pl.'s Mem. Supp. 23.)  For the reasons stated herein, the Court FINDS that the ALJ's determination that Allen is only partially credible is supported by substantial evidence.

Credibility determinations are reserved to the ALJ.  See Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988) ("Deference must be given the fact-finder's

31

inferences and credibility assessments."); Hammond v. Heckler, 765
F.2d 424, 426 (4th Cir. 1985) ("The ALJ is required to make
credibility determinations."); Smith v. Heckler, 760 F.2d 184, 187
(8th Cir. 1985) ("In a case where there exists conflicting
allegations and claims, credibility findings in the first instance
are for the ALJ."). The Court's analysis is therefore restricted
to determining if the ALJ's decision is supported by substantial
evidence and whether the ALJ applied the correct legal standard.
Craig, 76 F.3d at 589; see also Johnson v. Barnhart, 434 F.3d 650,
658 (4th Cir. 2005) ("Although [the court] cannot make credibility
determinations, [it is] empowered to review the ALJ's decisions for
substantial evidence.").

In evaluating a claimant's subjective complaints regarding
pain or other symptoms, the ALJ must follow a two-step process: (1)
determine whether there is objective medical evidence showing the
existence of "a medically determinable impairment(s) that could
reasonably be expected to produce [the] symptoms, such as pain"
alleged; and (2) if there is such evidence, "evaluate the intensity
and persistence of [the claimant's] symptoms [in order to]
determine how [the] symptoms limit [the claimant's] capacity for
work." 20 C.F.R. § 404.1529(c)(1); see also Social Security Ruling
(SSR) 96-7p, 61 Fed. Reg. 34,483, 34,484-85 (July 2, 1996); Craig,
76 F.3d at 594-95. In conducting the second step of the analysis,
the ALJ is required to make a credibility determination as to the

32

claimant's statements "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence". SSR 96-7p, 61 Fed. Reg. at 34,485; see also 20 C.F.R. § 404.1529(c)(4). When making the credibility finding, the ALJ must consider the entire record, including the objective medical evidence, the claimant's daily activities, any factors that aggravate or alleviate the symptoms, any treatment or medications used to relieve symptoms, and statements of treating or nontreating physicians and other persons familiar with the claimant's symptoms. SSR 96-7p, 61 Fed. Reg. at 34,485-87; 20 C.F.R. § 404.1529(c)(3); Craig, 76 F.3d at 595. Where the ALJ makes a negative credibility determination, he must specify the reasons for his decision and the evidence informing it. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); Ivey v. Barnhart, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005).

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight that the [ALJ] gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 61 Fed. Reg. at 34,485-86.

In the instant case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to

33

produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 26.)

Allen claims that after the ALJ determined that there was a medically determinable impairment that could produce the pain she complained of, "Allen was entitled to rely exclusively on subjective evidence to prove the second part of the test[, namely] . . . that Ms. Allen's pain is so continuous and/or so severe that it prevents her from working a full eight hour day." (Pl.'s Mem. Supp. 25.) Allen argues, correctly, that in the second step of the analysis she does not have to present objective evidence of pain or its severity. See Craig, 76 F.3d at 595; Mickles v. Shalala, 29 F.3d 918, 919-20 (4th Cir. 1994); Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986). However, she misconstrues the weight afforded her subjective complaints of pain. "Although a claimant's allegations about her pain may not be discredited *solely* because they are not substantiated by objective evidence of the pain itself or its severity, *they need not be accepted to the extent they are inconsistent with the available evidence*, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. (emphasis added). Accordingly, the ALJ may reject a plaintiff's testimony if it is inconsistent with the medical evidence. Mitchell v. Bowen, 827 F.2d 387, 389

34

(8th Cir. 1987).

In support of his RFC assessment and credibility determination, the ALJ referred to the reports of numerous treating and consulting physicians. The ALJ found that despite Allen's testimony that she was unable to "do anything but lay [sic] around" all day (R. at 350), multiple examinations conducted over a three-year period indicated that she had good range of motion in her extremities, normal gait, good motor strength, normal straight leg raising, and little difficulty performing the physical tasks asked of her, such as heel-to-toe walking, squatting, and taking off her shoes (R. at 26-27). The ALJ also noted that although there was evidence of some tenderness, various MRIs, X-rays, and scans showed no significant abnormalities. (R. at 26-27.)

In addition to the objective medical evidence identified by the ALJ, there are inconsistencies in the activities that Allen reported she was able to do. At the hearing before the ALJ, Allen testified that she usually spends her day lying around the house. (R. at 350.) She said that she normally did not watch TV, do chores around the house, or run errands. Id. However, the function report accompanying her application for disability indicates she can prepare small meals while sitting, do some household chores like dusting, folding clothes, and washing dishes, go grocery shopping with her husband or daughter every other week, and watch TV once or twice per week. (R. at 103-110.) The Court

35

also notes that each of the psychological evaluation reports indicates that she presented at the evaluation very well attired and groomed (R. at 199, 300), to include wearing high-heeled boots to at least one evaluation (R. at 199).

There is substantial evidence in the record to indicate that Allen is only partially credible about the severity of her symptoms and the extent to which they limit her daily activities. The ALJ's determination that Allen is not totally credible is amply supported by the administrative record, and the ALJ explained the evidence he considered in making his credibility determination. Based on the foregoing, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's determination that Allen is only partially credible.

### 3. The ALJ's Residual Functional Capacity Assessment

Allen alleges that the ALJ's residual functional capacity assessment was erroneous because "the overwhelming evidence . . . demonstrates that her mental and physical conditions prevent her from performing sedentary work" (Pl.'s Mem. Supp. 19) and because the ALJ "failed to consider the medical opinion of Dr. Mark Long" in making his assessment (Pl.'s Mem. Supp. 17).

When assessing a claimant's residual functional capacity, the ALJ "will consider [the claimant's] ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Physical requirements include the claimant's

ability to sit, stand, walk, and lift.  Id. § 404.1545(b).  When assessing the claimant's mental abilities, the ALJ considers "limitations in understanding, remembering, and carrying out instruction, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."  Id. § 404.1545(c).  Finally, the ALJ considers sensory impairments and environmental restrictions.  Id. § 404.1545(d).

### a.  The ALJ's Failure to Consider the Opinion of Dr. Long when Assessing Allen's Residual Functional Capacity

Allen alleges that the ALJ improperly "failed to consider the medical opinion of Dr. Mark Long when assessing [her] Residual Functional Capacity."  (Pl.'s Mem. Supp. 17-19.)  Allen further argues that "[t]he ALJ failed to assign any evidentiary weight to Dr. Long's opinion."  Id. at 19.  Defendant responds that "[i]n the face of . . . overwhelming record evidence demonstrating that plaintiff can work, the ALJ could not credit Dr. Long's opinion that plaintiff had a quite low likelihood of performing competitive work."  (Mem. Supp. Def.'s Mot. Summ. J. & Opp. Pl.'s Mot. Summ. J. 19 [hereinafter Def.'s Mem.].)

Dr. Long conducted a consultative mental health evaluation on April 30, 2007, based on a referral by Disability Determination Services.  (R. at 299.)  Dr. Long noted that Allen "walked with normal gait and without any ambulation problems."  (R. at 300.)  Allen "was alert and fully oriented," and was able to recall the names of presidents, correctly spell short words, and make change

from a dollar. (R. at 301.) However, she had difficulty with serial 7's and was only able to recall 1/4 objects. Id. Dr. Long observed that Allen "was quite tearful numerous times and seemed anxious, distressed and sad." Id. Although Dr. Long found "no evidence of any delusions or hallucinations," he noted that Allen's "insight was poor with poor judgement [sic] and a low frustration tolerance level." (R. at 302.) The record also indicates that Allen "denied current suicidal ideation and intent." Id. Based on his evaluation, Dr. Long diagnosed Allen with "[m]ajor depressive disorder, recurrent, severe; provisional generalized anxiety disorder" and assigned a GAF score of 55.[15] Id. With regard to Allen's employability, Dr. Long opined that "[i]f she presents to prospective employers like she did during this evaluation, it is unclear whether or not she would be hired, . . . [and t]he likelihood she would be successful at competitive employment at this point in time is quite low." (R. at 302-03.) In his recommendation, Dr. Long suggested that "Gladys would benefit from mental health treatment. This includes both pharmacotherapy and psychotherapy." (R. at 303.)

"In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even

---

[15] As discussed above, a GAF score of 55 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34.

those that are not 'severe.'" Social Security Ruling (SSR) 96-8p , 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(2), (e). In this case, the ALJ's RFC assessment only considered the limitations imposed by Allen's severe physical impairments. (R. at 25-27.) The only reference to depression in the RFC assessment is provided by Allen's daughter's testimony. (R. at 26.) Not only does the ALJ not specifically consider Dr. Long's report, but no where in his assessment does the ALJ consider any medical evidence of Allen's depression or the psychological evaluations that indicate the impact her depression has on her ability to function.

Defendant argues that "[i]n the face of . . . overwhelming record evidence demonstrating that plaintiff can work, the ALJ could not credit Dr. Long's opinion that plaintiff had a quite low likelihood of performing competitive work." (Def.'s Mem. 19.) The ALJ has a duty to assign weight to medical opinions and other evidence in the record and cannot dismiss an opinion without explaining the rationale for doing so. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence."). It is not for the Defendant to supply the ALJ's reasoning, nor is it for the Court to provide conjecture as to what informed the ALJ's decision. See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in

upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's opinion should have been evaluated based solely on the reasons stated in the decision."). It is the responsibility of the ALJ alone to explain the rationale for his decision. Furthermore, the Court cannot credit the Defendant's argument because the ALJ failed to discuss *any* of the "overwhelming record evidence demonstrating that plaintiff can work" despite the limitations imposed by her non-severe mental impairment. Accordingly, the case must be REVERSED and REMANDED to the ALJ to reevaluate Allen's RFC, taking into account the limitations imposed by all of Allen's impairments, including her non-severe impairments.

## b. The ALJ's Finding that Allen can Perform the Full Range of Sedentary Work

The ALJ found that Allen was capable of performing the full range of sedentary work. (R. at 25.) The social security regulations define "sedentary work" as work that

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Because the ALJ failed to consider the limiting effects of Allen's non-severe mental impairment when making the RFC

40

determination, the Court FINDS that the ALJ's finding that Allen can perform the full range of sedentary work is not supported by substantial evidence. Accordingly, the case should be REVERSED and REMANDED to the ALJ to reassess Allen's residual functional capacity.

## C. **Conclusion**

For the reasons discussed above, the Court FINDS that there is substantial evidence in the record to support the ALJ's finding that Allen's mental impairments are non-severe and the ALJ's credibility determination. However, the ALJ's assessment of Allen's residual functional capacity is not supported by substantial evidence. The ALJ's failure to consider Dr. Long's report, or any other evidence of Allen's non-severe mental impairments when assessing her residual functional capacity requires this Court to remand to the Commissioner for reexamination consistent with the foregoing recommendation. Accordingly, the Court RECOMMENDS that the Commissioner's decision be REVERSED and the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).

## VI. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Defendant's Motion for Summary Judgment be DENIED, that Plaintiff's Motion for Summary Judgment seeking disability insurance benefits be DENIED in part, but that the motion be GRANTED to the extent of

vacating and remanding the Commissioner's decision, and that the matter be REMANDED to the Commissioner of Social Security for further proceedings consistent with this Report and Recommendation.

## VII. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 153-54 (1985); Carr v. Hutto, 737 F.2d 433, 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984).

F Bradford Stillman

United States Magistrate Judge

Norfolk, Virginia

February 24, 2010

43

<u>**CLERK'S MAILING CERTIFICATE**</u>

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Charlene A. Morring, Esq.
Montagna Klein Camden LLP
425 Monticello Ave
Norfolk, Virginia 23510
Counsel for Plaintiff

George M. Kelley III, Esq.
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk
February 25, 2010